UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIANA HUEMER, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>SANTA CRUZ COUNTY ANIMAL SHELTER FOUNDATION, et al.,<br><br>   Defendants. | Case No. 21-cv-07372-SVK<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 26 |

This action arises out of two raids of Plaintiff Eeyore's Hen Harbor, an animal rescue and rehabilitation organization founded by Plaintiff Ariana Huemer, which were carried out in 2020 by Defendant Santa Cruz County Animal Shelter Foundation, an agency of the County of Santa Cruz. Dkt. 24 (First Amended Complaint or "FAC") ¶¶ 4-6, 20-21. Plaintiffs assert several causes of action against the agency and individual Defendants who are employees of the agency. All parties have consented to the jurisdiction of a magistrate judge. Dkt. 9, 18, 33.

Defendants now move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. 26 ("Motion"). Plaintiffs opposed the motion (Dkt. 28 ("Opp.")), and Defendants filed a reply (Dkt. 30 ("Reply")). This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). After considering the Parties' briefs, the case file, and relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss for the reasons that follow. The Court also **GRANTS** Defendants' request for judicial notice (Dkt. 27) that was filed with the Motion.

**I. BACKGROUND**

This recitation of facts is taken from the allegations in the FAC (Dkt. 24). Plaintiff Ariana Huemer ("Huemer") founded Plaintiff Eeyore's Hen Harbor ("Hen Harbor") in 2012, and she is the president, director, and principal employee of the organization. FAC ¶¶ 4, 5, 14. Hen Harbor, a nonprofit corporation located in Felton, California, rescues, rehabilitates, and provides long-term housing for abused and neglected chickens, other birds, and occasionally other animals. *Id.*

Defendant Santa Cruz Animal Shelter (the "Agency") is an agency of the County of Santa Cruz. *Id.* ¶ 6. Defendant Melanie Sobel ("Sobel") is the General Manager of the Agency. *Id.* ¶ 7. Sobel is the direct supervisor of Defendant Todd Stosuy ("Stosuy"), who is Field Service Manager of the Agency. *Id.* ¶¶ 7-8. Defendant Carlos Montes ("Montes") works for the Agency as Animal Control Officer II. *Id.* ¶ 9. Sobel, Stosuy, and Montes are referred to as the "Individual Defendants." The FAC also includes as Defendants unnamed Does 1-10, who are alleged to be County employees who participated in unlawful acts alleged in the FAC. *Id.* ¶ 10.

Since at least 2011, Huemer has frequently and publicly criticized multiple policies and actions of the Agency and its employees. *Id.* ¶¶ 15, 35-42. During the August 2020 CZU fire, which burned tens of thousands of acres in Santa Cruz County, Huemer warned the public that the Agency was "far too likely to allow birds to die, in cases where they could be saved." *Id.* ¶¶ 15, 31, 42

On September 21, 2020, Defendants executed a search warrant at Hen Harbor and seized a small number of ill birds and approximately 200 healthy birds. *Id.* ¶¶ 18, 20. On October 2, 2020, Defendants obtained a second search warrant and seized 80 healthy birds at Hen Harbor. *Id.* Huemer requested and obtained a post-seizure hearing after each raid, at which the judicial officer ordered the Agency to return all animals and property seized in the two raids. *Id.* ¶¶ 25-26, 88-89. Although some animals were returned, hundreds were not. *Id.* ¶ 100.

Huemer filed this lawsuit on September 22, 2021, asserting causes of action for violations of the First, Fourth, and Fourteenth Amendments; *Monell* liability; liability under the California Unruh Act, Bane Act, and unfair competition statutes; trespass to land; conversion; and strict liability. Dkt. 1 (corrected at Dkt. 13). Defendants filed a motion to dismiss the original complaint. Dkt. 19. In lieu of opposing that motion, Plaintiffs filed the FAC. Dkt. 24. The FAC adds Hen Harbor as a Plaintiff and asserts the following causes of action: (1) retaliation in violation of the First Amendment; (2) deprivation of property in violation of the Fourth Amendment; (3) unreasonable seizure in violation of the Fourteenth Amendment; (4) *Monell* liability; (5) violation of the Bane Act (Cal. Civ. Code § 52.1); (6) conversion; (7) strict liability of bailors; and (8) trespass to land. *Id.* In the present motion to dismiss, Defendants argue that the

allegations by Plaintiff Hen Harbor are vague and insufficiently pleaded. Dkt. 26 at 7-8. Defendants also seek to dismiss Plaintiffs' claims for violation of the First Amendment (First Cause of Action), violation of the Fourteenth Amendment (Third Cause of Action), *Monell* liability (Fourth Cause of Action); and state law claims for violation of the Bane Act, conversion, strict liability, and trespass (Fifth through Eighth Causes of Action). *Id*. at 8-21.

## II. REQUEST FOR JUDICIAL NOTICE

Together with the Motion, Defendants filed a request that the Court take judicial notice of the following documents: (1) Notice of Seizure of Animals dated September 21, 2020; (2) Notice of Seizure of Animals dated October 2, 2020. Dkt. 27 (the "RJN"). Plaintiffs filed a notice stating that they do not oppose the RJN. Dkt. 29.

A court may take judicial notice of documents outside of the complaint that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). The documents that are the subject of Defendants' RJN are public records that are properly the subject of judicial notice, and therefore the Court may consider them without converting the Rule 12 motion to dismiss into one for summary judgment. *See United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008). Accordingly, the Court **GRANTS** Defendants' unopposed RJN.

## III. MOTION TO DISMISS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

2008) (citation omitted).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B. Allegations of Plaintiff Hen Harbor

Defendants argue that the claims brought by Hen Harbor should be dismissed for insufficient pleading. Motion at 7-8. Defendants concede that "[a] corporation has standing to bring most constitutional and statutory claims," including claims under 42 U.S.C. § 1983. *Id.* at 7. However, according to Defendants, Hen Harbor's claim for retaliation in violation of the First Amendment fails because there are no factual allegations regarding what speech, if any, Hen Harbor (as opposed to Huemer) engaged in. *Id.* For the Fourth Amendment claim, Defendants argue that there are no allegations regarding which Plaintiff owns the property or animals at issue. *Id.* Defendants also argue that the Fourteenth Amendment claim fails because it is not alleged that Hen Harbor was denied a post-seizure hearing. *Id.* at 7-8.

Plaintiffs respond that except for one letter sent by Huemer in 2011, "all operative facts occurred in 2012 or later when Ms. Huemer was Hen Harbor's president, director, and principal employee" and thus "Ms. Huemer has acted as an individual, as a Hen Harbor official, and as both simultaneously since 2012." Opp. at 6-7. Plaintiffs argue that the allegations of the First Amendment, Fourth Amendment, and Fourteenth Amendment "fairly represent Plaintiffs' separate and simultaneously capacities" and satisfy the relevant pleading standards. *Id.* at 7.

The Court finds that the allegations relating to Hen Harbor, which is alleged to be a California nonprofit corporation (FAC ¶ 5), are adequate at this pleading stage of the litigation. Accordingly, Defendants' motion to dismiss Hen Harbor's claims is **DENIED.** This ruling is without prejudice to Defendants' ability to challenge Hen Harbor's status on summary judgment,

if warranted.

### C. First Cause of Action: Retaliation in Violation of First Amendment

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions...for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "[T]o demonstrate a First Amendment violation, a plaintiff must provide evidence showing that by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (internal citation and quotation marks omitted). Defendants argue that the First Cause of Action for retaliation in violation of the First Amendment, which is asserted against only the Individual Defendants (Sobel, Stosuy, and Montes), fails in both respects. Motion at 8-10.

On the requirement that Plaintiffs allege facts showing a chilling effect, Defendants point to allegations in the FAC showing that Huemer's criticism of the Agency continued past the disputed raids as demonstrating that her speech was not chilled. Motion at 9. Plaintiffs respond by asserting that they are not required to plead that their speech was actually inhibited or suppressed; rather, the issue is whether an official's acts would "chill or silence a person of ordinary firmness from future First Amendment activities." Opp. at 7 (quoting *Lacey*, 693 F.3d at 916). The Court agrees with Plaintiffs that they need not plead that their speech was actually chilled. The FAC alleges an escalating series of retaliatory actions, culminating in two raids of Hen Harbor and the seizure of hundreds of birds and other animals. *See, e.g.,* FAC ¶¶ 18-26, 35-44, 49-87, 107. Accepting Plaintiffs' factual allegations as true and construing the pleadings in the light most favorable to them, the Court finds that the FAC as a whole provides enough facts to state a plausible claim that Defendants' acts would chill or silence a person of ordinary firmness from future First Amendment activities.

Defendants also argue that the FAC does not contain any factual allegations that the Individual Defendants acted out of retaliatory animus as a result of Huemer's complaints about the Agency, as required to state a claim for retaliation in violation of the First Amendment. *Id.* (citing *Lacey*, 693 F.3d at 917 (stating that plaintiff "must allege facts ultimately enabling him to prove

the elements of retaliatory animus as the cause of injury, with causation being understood to be but-for causation" (internal quotation marks and citations omitted))). Here, as discussed above, the FAC contains extensive allegations regarding actions taken by Defendants against Plaintiffs, including obtaining search warrants by allegedly withholding information from the magistrate judge and threatening to press criminal charges against Huemer, and attributes them to animus towards Plaintiffs due to Huemer's frequent and public criticisms of the Agency, in particular her August 2020 criticisms of the Agency in connection with the CZU fire. *See, e.g.,* FAC ¶¶ 15-16, 21, 43-46, 102. The Ninth Circuit held that somewhat similar allegations were sufficient to state a claim for retaliation in violation of the First Amendment in *Lacey*, where a defendant County Attorney issued "broad, invalid subpoenas" to a newspaper that was critical of the County Sheriff; moved for arrest warrants, contempt findings, and fines; and arrested the co-owners of the newspaper on the day a critical article appeared. *Lacey*, 693 F.3d at 917. Again accepting Plaintiffs' factual allegations as true and construing the pleadings in the light most favorable to them, the Court finds that the FAC states a plausible claim that Defendants' retaliatory animus led to the injuries alleged by Plaintiffs.

Accordingly, Defendants' motion to dismiss the First Cause of Action is **DENIED**.

### D. Third Cause of Action: Deprivation of Property Without Procedural Due Process in Violation of Fourteenth Amendment

The Third Cause of Action in the FAC alleges that the Individual Defendants deprived Plaintiffs of property without procedural due process, in violation of Plaintiffs' Fourteenth Amendment Rights, by seizing (an in some cases injuring, killing, or losing) hundreds of Plaintiffs' birds without any pre-deprivation hearing. FAC ¶¶ 114-118. Defendants argue that the Third Cause of Action in the FAC is defective because it is "dependent on the notice and opportunity to be heard after seizure of [the] animals pursuant to California Penal Code § 597.1(a)(1)," which the FAC does not mention or address. Motion at 10-11.

Penal Code § 597.1(a)(1) provides:

> Every owner, driver, or keeper of any animal who permits the animal to be in any building, enclosure, lane, street, square, or lot of any city, county, city and county, or judicial district without proper care and attention is guilty of a misdemeanor.

> Any peace officer, humane society officer, or animal control officer shall take possession of the stray or abandoned animal and shall provide care and treatment for the animal until the animal is deemed to be in suitable condition to be returned to the owner. When the officer has reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal or the health or safety of others, the officer shall immediately seize the animal and comply with subdivision (f). In all other cases, the officer shall comply with the provisions of subdivision (g). The full cost of caring for and treating any animal properly seized under this subdivision or pursuant to a search warrant shall constitute a lien on the animal and the animal shall not be returned to its owner until the charges are paid, if the seizure is upheld pursuant to this section.

The subsections cross-referenced in this section provide for a pre-seizure or post-seizure hearing, depending on the circumstances. Penal Code § 597.1(f) provides for a post-seizure hearing that complies with certain procedural requirements in the event an officer seizes or impounds an animal "based on a reasonable belief that prompt action is required to protect the health or safety of the animal or health or safety of others." Penal Code § 597.1(g) provides for a pre-seizure hearing that complies with certain procedural requirements "[w]here the need for immediate seizure is not present."

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." *Strauss v. County of Los Angeles,* No. 19-CV-05277-GW (AFM), 2020 WL 8026143, at *9 (C.D. Cal. Oct. 7, 2020) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Defendants appear to argue that because the FAC concedes that Plaintiffs were afforded post-seizure hearings after both seizures, they cannot state a claim for deprivation of property without due process. Motion at 10-11. Plaintiffs agree with Defendants that section 597.1(f) "provides a statutory regimen for a post-seizure hearing for birds taken and held by law enforcement officers" and concede that "[t]he named Defendants are not liable pursuant to the Fourteenth Amendment for the seized birds who were killed by County Shelter employees." Opp. at 9. However, Plaintiffs argue that "there is no statutory regimen or other process provided for the deprivation of Plaintiffs' birds who disappeared—who the Defendants cannot return with or without a post-seizure hearing." *Id.* Plaintiffs also argue that the Third Cause of Action states a claim against Doe Defendants who

7

1  euthanized some of the seized birds because "Plaintiffs were not given any opportunity, procedural
2  or otherwise, to save or reclaim any of her [sic] birds who Does #2-10 killed." *Id.* at 10. Plaintiffs
3  appear to allege that Does 2-10 are veterinarians. *Id.* at 10-11. From Plaintiffs' arguments, the
4  Court understands them to be claiming that the Individual Defendants are liable for the birds that
5  disappeared, and that Doe Defendants 2-10 are liable for the birds that were euthanized.

6  Defendants rely on *Recchia v. City of Los Angeles Dep't of Animal Servs.*, 889 F.3d 553,
7  561-62 (9th Cir. 2018), in arguing that "the statutory procedures set forth in Cal. Penal Code
8  § 597.1 provide sufficient due process." Motion at 11. The plaintiff in that case argued that
9  animal control officers violated his Fourteenth Amendment procedural due process rights by
10 denying him a hearing before taking and destroying his outwardly healthy-looking birds. *Recchia*,
11 889 F.3d at 560-61. The Ninth Circuit held that section 597.1 provides due process. *Id.* at 562.
12 *Recchia* held that the officers were entitled to summary judgment on the Fourteenth Amendment
13 claim "because neither of the Officers was involved in the decision to euthanize the birds," but
14 that case left open the issue of whether a similar plaintiff could state a claim against persons
15 involved in the decision to euthanize the birds, such as the veterinarian Doe Defendants in this
16 case. *Id.* at 561; *see also Strauss*, 2020 WL 8025143, at *10 ("To the extent plaintiff is alleging
17 that the subsequent discretionary decision to euthanize one [seized] cat caused an independent
18 violation of her Fourteenth Amendment rights, plaintiff has made no factual showing that *any*
19 *named individual defendant* was involved in making that decision or took any action that caused
20 plaintiff's cat to be euthanized) (emphasis added)). *Recchia* also did not address a situation where
21 certain seized birds were lost, as occurred in this case.

22 Accordingly, Defendants' arguments in the Motion do not foreclose the possibility that
23 Plaintiffs can state a claim for violation of the Fourteenth Amendment. However, the Third Cause
24 of Action, as pleaded in the FAC, does not conform to arguments Plaintiffs make in opposition to
25 the Motion. For example, although the Parties' arguments on the Motion focus on the availability
26 of a post-seizure hearing, the Third Cause of Action repeatedly refers to the lack of any "pre-
27 deprivation" hearing. FAC ¶¶ 114-116. Moreover, although Plaintiffs concede that "[t]he named
28 Defendants are not liable pursuant to the Fourteenth Amendment for the seized birds who were

killed by County Shelter employees" (Opp. at 9), the FAC alleges that "individual Defendants (including Doe Defendants) directly killed some birds" and that "individual Defendants … intentionally killed birds who should never have been taken from Plaintiffs." FAC ¶¶ 115, 116. Therefore, Defendants' motion to dismiss the Third Cause of Action is **GRANTED WITH LEAVE TO AMEND** to give Plaintiffs the opportunity to clarify the basis for their claim.

### E. Fourth Cause of Action: *Monell* Liability

The FAC asserts a *Monell* liability claim against the Agency. FAC at Fourth Cause of Action. 42 U.S.C. § 1983 provides a cause of action against any "person" who, under color of law, deprives any other person of rights, privileges, or immunities secured by the Constitution or the United States. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 691-92 (1978). Although a municipality qualifies as a "person" under section 1983, a municipality cannot "be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official capacity.'" *Ulrich v. City & County of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 694). The Ninth Circuit has cautioned that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019).

Because the Agency is a public entity, to hold it liable under section 1983 Plaintiffs must show: (1) they possessed a constitutional right of which they were deprived; (2) the Agency had a policy; (3) the Agency's policy amounts to deliberate indifference to Plaintiffs' constitutional right; and (4) the policy is the moving force behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *see also Tovar v. City of San Jose,* No. 5:21-cv-02497-EJD, 2021 WL 6126931, at *4 (N.D. Cal. Dec. 28, 2021) (citation omitted). Plaintiffs may show the Agency's policy by showing that: (1) the Agency had an official policy; (2) the Agency had a pervasive practice or custom; (3) the Agency failed to adequately train, supervise, or discipline; or (4) the violation resulted from a decision or act of a final decisionmaker. *Horton,* 915 F.3d at 602-

03.

The FAC in this case alleges that an Agency policy or custom is established by: (1) inadequate training and/or supervision; and/or (2) acts of or ratification by a final policy maker. FAC ¶¶ 121, 127, 130-131. For purposes of the present motion to dismiss, Defendants assume Plaintiffs adequately allege a constitutional violation. Motion at 17. Defendants nevertheless contend that the FAC fails to state a claim under *Monell* for several reasons. First, Defendants argue that the FAC does not factually allege a pattern of similar constitutional violations by untrained employees or how the Agency's allegedly inadequate training or supervision caused the alleged unreasonable seizures or procedural due process violations. *Id.* at 18-20, 21. Second, Defendants argue that the FAC fails to adequately plead knowledge or approval by policymakers of any unconstitutional conduct. *Id*. at 20-21.

### 1. Inadequate Training/Supervision

Defendants argue that to prevail on a theory that the Agency's policy or custom was inadequate, Plaintiffs must show a policy or custom "so persistent and widespread that it constitutes a permanent and well settled [Agency] policy" and that "isolated or sporadic" incidents are not enough. Motion at 18 (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). In response, Plaintiffs claim the FAC alleges "a pattern of actions and injuries caused by Defendants' utter lack of training and supervision." Opp. at 14. Plaintiffs' argument in this regard focuses only on the Defendants' course of conduct in connection with the raids of Hen Harbor at issue in this case. Opp. at 14-15. Although the relevant allegations of the FAC are phrased in more general terms, they are similarly focused on the specific events between Agency and Plaintiffs. *See, e.g.,* FAC ¶¶ 120-130. Where, as here, "not a single similar incident to [those involving the plaintiffs] is alleged in plaintiffs' FAC," the allegations are insufficient to sustain a *Monell* cause of action. *See Aguaristi v. County of Merced,*, No. 1:18-cv-01053-DAD-EPG, 2019 WL 330908, at *4 (E.D. Cal. Jan. 25, 2019); *see also Bazurto v. City of Gilroy Police Dep't.*, No. 20-CV-06829-VKD, 2021 WL 4975016, at *4 (N.D. Cal. Oct. 26, 2021) (dismissing *Monell* cause of action where complaint contained "no factual allegations plausibly supporting the existence of any such policies, practices, or customs, beyond the facts of [the plaintiff's] own encounter with

10

1    [police] officers" and "no factual allegations supporting [the plaintiff's] claim that [the police
2    department's] training of its officers was inadequate").

3        Defendants also argue that the FAC fails to factually allege *how* the Agency's alleged
4    inadequate training or supervision caused the allege unreasonable seizures or procedural due
5    process violation. Motion at 21. The Court agrees. In part, this deficiency stems from the fact
6    that the FAC is unclear about whether Plaintiffs' *Monell* claim is based on the *existence* of a
7    policy or the *absence* of a policy. Plaintiffs list a series of general policies that the Agency "must
8    have," such as policies about when pre-deprivation hearings are offered, when officials have the
9    authority to seize animals, how to care for animals in its custody, and procedures to ensure the
10   prompt return of animals to their owners. FAC ¶ 120. Plaintiffs go on to allege that as to each
11   policy, the Agency "(i) failed to adopt a required policy, (2) adopted a policy that was not
12   constitutionally sufficient, (iii) adopted a constitutionally sufficient policy that it disregarded as a
13   matter of custom as known to its policy maker, ***and/or*** (iv) its policy-maker made a decision in
14   this case to disregard constitutional requirements with no lawful basis. *Id.* ¶ 121 (emphasis
15   added). Plaintiffs then set forth a series of conclusory statements that "[o]ne or more of the
16   foregoing policies cause the County Agency" to inflict various harms on Plaintiffs. *Id.* ¶¶ 122-
17   128. Taken together, these allegations lack the necessary factual basis showing that the alleged
18   constitutional deprivations suffered by Plaintiffs were the result of a custom or practice of the
19   Agency or that the custom or practice was the "moving force" beyond the constitutional
20   deprivations. *See Dougherty v. City of Covina*, 654 F.3d 892, 900-901 (9th Cir. 2011).

21       **2.    Policymaker Action or Ratification**

22       "[A] local government may be held liable under [Section] 1983 when the individual who
23   committed the constitutional tort was an official with final policy-making authority or such an
24   official ratified a subordinate's unconstitutional decision or action and the basis for it." *Gordon v.*
25   *County of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (internal quotation marks and citations
26   omitted). Plaintiffs argue that even if they are required to show multiple incidents to establish that
27   the Agency's policies or customs were inadequate, "[a] single decision by an employee with
28   authority to establish policy with respect to the subject matter of the decision is an act of official

11

1  government policy and can thus give rise to municipal liability under section 1983." Opp. at 15
2  (quoting *Davis v. City of Ellensburg*, 869 F.2d 1230, 1234 (9th Cir. 1989)).

3  The FAC alleges: "Policy Makers include (without limitation) GM Sobel, Supervisor
4  Stosuy, County Agency's board of directors, as well as others who may be identified as having
5  policy-making authority, and who enacted, adopted, followed, and/or ratified said challenged
6  County Agency Policies." FAC ¶ 131. The FAC also alleges the reporting relationship among
7  Defendants Sobel, Stosuy, and Montes. *Id.* ¶¶ 7-8.

8  These conclusory allegations do not plausibly plead a *Monell* claim based on policymaker
9  action or ratification. They do not establish that any of the alleged policymakers, such as
10 Defendants Sobel and Stosuy, had policymaking authority. Moreover, Plaintiffs' ratification
11 theory appears to be based primarily on the inaction of those Defendants. *See, e.g.,* Opp. at 15
12 ("GM Soble's presence, even if she did not speak a word, establishes or ratifies County Shelter's
13 policy to seize Plaintiffs' birds"); *id.* at 15-16 ("Supervisor Stosuy's pattern of deficient
14 supervision of Officer Montes over a few months led to Plaintiffs' injuries"). However, the mere
15 failure to overrule a subordinate's actions or failure to discipline a subordinate does not amount to
16 ratification of their allegedly unconstitutional actions. *Sweiha v. County of Alameda*, No. 19-cv-
17 03098-LB, 2019 WL 4848227, at *5 (N.D. Cal. Oct. 1, 2019).

### 3. Conclusion on *Monell* Cause of Action

19 The Court finds the allegations of the FAC insufficient to plead a plausible factual basis for
20 the Agency to be held liable under *Monell*. In particular, the FAC fails to allege the substance of
21 the Agency's alleged policies or customs, fails to allege that the policies/customs are persistent or
22 widespread, fails to show how an allegedly deficient policy or other action of the Agency caused
23 the constitutional injuries Plaintiffs allege, and fail to allege facts showing action or ratification by
24 an Agency decisionmaker. It is not clear that Plaintiffs cannot overcome the deficiencies in their
25 *Monell* claim against the Agency by amendment. Accordingly, the motion to dismiss the *Monell*
26 claim against the Agency is **GRANTED WITH LEAVE TO AMEND**.

### F. Fifth through Eighth Causes of Action: State Law Claims

28 Defendants argue that the state law claims in the Fifth (Bane Act), Sixth (conversion),

Seventh (strict liability for bailors), and Eighth (trespass to land) Causes of Action are barred by applicable immunities pursuant to California Government Code §§ 820.2 and 821.6. Motion at 11-17. In their Opposition, Plaintiffs expressly abandon their Seventh Cause of Action for strict liability. Opp. at 6. Accordingly, Defendants' motion to dismiss the Seventh Cause of Action is **GRANTED WITHOUT LEAVE TO AMEND.** As to the remaining state law claims, Plaintiffs argue that Defendants are not entitled to immunity. *Id.* at 11-14.

### 1. California Government Code § 820.2

Defendants argue that their decision to seize the animals at issue "represents an exercise of discretion" and that they are therefore entitled immunity under California Government Code § 820.2. Motion at 12-13. That section provides immunity to a public employee whose injurious act "was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't C. § 820.2.

Plaintiffs counter that the state law claims in this case "are not based on the animals being seized" but are instead "based on Defendants' specific intent to interfere with Plaintiffs' constitutional rights, Defendants' disobedience of the judicial officer's order to return all of Plaintiffs' animals to them, and damaging Plaintiffs' real property." Opp. at 11. Defendants contend that Plaintiffs' characterization of the conduct at issue is too narrow. Reply at 5. Specifically, Defendants argue that the alleged incident of ramming an Agency vehicle into a post that supported Plaintiffs' car port "occurred as part of the seizure of Plaintiffs' animals," which is the discretionary action that gives rise to immunity under section 820.2. *Id.* Similarly, Defendants state that the alleged conversion of Plaintiff's birds was "part and parcel of the inherent discretion to seize the birds." *Id.*

Discretionary functions involve "deliberate and considered policy decisions, in which a conscious balancing of risks and advantages" takes place, rather than "lower-level, or ministerial, decisions that merely implement a basic policy already formulated." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995) (internal quotation marks and citations omitted); *see also Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998). The relevant distinction is "between the 'planning' and 'operational' levels of decision-making." *Johnson v. State of Cal.*, 69 Cal. 2d 782,

13

794 (1968). "[T]here is no basis for immunizing lower level decisions that merely implement a basic policy already formulated … [and the] scope of the discretionary act immunity should be no greater than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions." *Barner v. Leeds*, 24 Cal. 4th 676, 685 (2000) (internal quotation marks and citations omitted). Thus, for example, "the initial determination whether to provide representation to a certain class of individuals or to represent a particular defendant" might qualify as a policy decision but the subsequent provision of such services to an individual client "consist[s] of operational duties that merely implement the initial decision to provide representation. *Id.* at 688. As another example, "a university's decision to create specific programs and protocols to identify and respond to threats of violence on campus would appear to qualify as a planning or policy determination" and thus be "discretionary" within the meaning of section 820.2, but "the manner in which the university and its employees executed those programs with respect to an individual student" constitute "subsequent ministerial actions." *Regents of the Univ. of Cal. v. Sup. Ct.*, 29 Cal. App. 5th 890, 915-16 (Cal. Ct. App. 2018).

Several cases have considered section 820.2 in the context of claims regarding the seizure of animals. In *Recchia*, the Ninth Circuit held that animal control officers were immune from state law claims for conversion and intentional and negligent inflict of emotional distress "based on events tied to the seizure of the pigeons." *Recchia*, 889 F.3d at 563-64. The court explained that "[t]o seize the birds in this case, the officers first had to make a discretionary decision that very prompt action was required to protect the health or safety of the birds or of others" and thus "deciding whether to seize animals under § 597.1(a)(1) clearly represents an exercise of discretion." *Id.* at 564. Similarly, a district court in *Jackson v. Silicon Valley Animal Control Authority* held that "to the extent that [the government agency and officers] followed the procedures set forth in Section 597.1, they cannot be liable for any state law tort against the [plaintiffs]." *Jackson*, No. C 07-5667 RS, 2008 WL 4544455, at *5 (N.D. Cal. Oct. 2, 2008).

To be entitled to immunity under section 820.2, public entities bear the burden of showing that a discretionary decision, consciously balancing the rises and advantages, took place. *Theis v. Yuba County Sheriff's Dep't.*, No. 2:18-cv-03278-KJM-KJN, 2019 WL 3006261, at *6 (E.D. Cal.

July 10, 2019) (citing *Johnson,* 69 Cal. 2d at 794 n.8). Taking the allegations of the FAC as true, the Court cannot conclude at this stage of the proceedings that Defendants are entitled to immunity under Government Code § 820.2. Although Defendants may be correct that the decision to seize Plaintiffs' animals under Penal Code § 597.1 constitutes a discretionary decision, Plaintiffs' state law claims appear to be based at least in part on operational decisions as to how to implement the seizure, such as decisions on how to handle the animals that were seized (*see* FAC ¶¶ 137-138) and conduct during the seizure operations that resulted in damage to Huemer's car port (*see id.* ¶ 144). Such operational decisions are not entitled to immunity under section 820.2.

### 2. California Government Code § 821.6

Defendants also argue that they are immune from Plaintiffs' state law tort claims under Government Code § 821.6, which states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Motion at 14-17. Defendants acknowledge that "the Ninth Court decision in *Garmon v. County of Los Angeles*, 828 F.3d 837 (9th Cir. 2016) appears to limit the scope of § 821.6 immunity to malicious prosecution cases" but argue that California Court of Appeals cases support a broader application of section 821.6 immunity. *Id.*

In *Garmon*, the Ninth Circuit stated that it had to determine what meaning the California Supreme Court would give to section 821.6 and concluded that the state's highest court would adhere to its decision in *Sullivan v .County of Los Angeles,* 12 Cal. 3d 710 (1974), which interpreted the statute as reaching only malicious prosecution actions, even though California Courts of Appeal had interpreted the statute more expansively. *Garmon*, 828 F.3d at 847. In light of these Ninth Circuit and California Supreme Court precedents, the Court declines at this stage of the proceedings to conclude that section 821.6 immunity can properly be extended to the state law tort claims in this case.

### 3. Conclusion on Immunity for State Law Claims

For the reasons discussed, Defendants' motion to dismiss Plaintiffs' Fifth, Sixth, and Eighth Cases of Action on the ground of immunity under California Government Code §§ 820.2

and/or 821.6 is **DENIED**. Because the Court denies immunity for other reasons, it need not resolve the Parties' dispute over whether state law provides immunity for Bane Act violations where defendants are alleged to have specifically intended to violate the plaintiff's constitutional rights. *See* Opp. at 12; Reply at 5-6.

## IV.  CONCLUSION AND DISPOSITION

For the foregoing reasons, Defendants' motion to dismiss the FAC is **GRANTED IN PART and DENIED IN PART**, as follows:

- Defendants' motion to dismiss Hen Harbor's claims is **DENIED**.
- Defendants' motion to dismiss the First Cause of Action for retaliation in violation of the First Amendment is **DENIED.**
- Defendants' motion to dismiss the Third Cause of Action for deprivation of property without procedural due process in violation of the Fourteenth Amendment is **GRANTED WITH LEAVE TO AMEND.**
- Defendants' motion to dismiss the Fourth Cause of Action for *Monell* liability is **GRANTED WITH LEAVE TO AMEND.**
- Defendants' motion to dismiss the Fifth Cause of Action for violation of the Bane Act, the Sixth Cause of Action for conversion, and the Eighth Cause of Action for trespass to land is **DENIED.**
- Plaintiffs have abandoned their Seventh Cause of Action for strict liability for bailors, and therefore the cause of action is **DISMISSED WITHOUT LEAVE TO AMEND.**

Plaintiffs may file a Second Amended Complaint within **14 days of the date of this order.**

**SO ORDERED.**

Dated: June 23, 2022

SUSAN VAN KEULEN
United States Magistrate Judge