1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7    ARIANA HUEMER, et al.,                    Case No.  21-cv-07372-SVK

8                    Plaintiffs,
                                               **ORDER ON DEFENDANTS' MOTION**
9            v.                                **TO DISMISS SECOND AMENDED**
                                               **COMPLAINT; SETTING INITIAL**
10   SANTA CRUZ COUNTY ANIMAL                   **CASE MANAGEMENT CONFERENCE**
     SHELTER FOUNDATION, et al.,
11                                             Re: Dkt. No. 36
                     Defendants.
12

13           Before the Court is the motion of Defendant Santa Cruz Animal Shelter (the "Agency")

14   and Individual Defendants Melanie Sobel, Todd Stosuy, and Carlos Montes to dismiss the *Monell*

15   claim in the Second Amended Complaint filed by Plaintiffs Ariana Huemer ("Huemer") and

16   Eeyore's Hen Harbor ("Hen Harbor").  Dkt. 36.  All Parties have consented to the jurisdiction of a

17   magistrate judge.  Dkt. 9, 18, 33.  The Court finds this matter suitable for determination without

18   oral argument.  Civ. L.R. 7-1(b).  For the reasons that follow, the motion to dismiss Plaintiffs'

19   *Monell* claim is **GRANTED WITHOUT LEAVE TO AMEND.**

20   I.      **BACKGROUND**

21           This action arises out of two raids on Hen Harbor, an animal rescue and rehabilitation

22   organization founded by Huemer, which were carried out in 2020 by the Agency.  *See* Dkt. 35 (the

23   "Second Amended Complaint" or "SAC").  The relevant procedural and factual background is set

24   forth in the Court's order on Defendants' motion to dismiss Plaintiffs First Amended Complaint

25   ("FAC").  Dkt. 34 (the "Order Dismissing FAC").  In the Order Dismissing FAC, the Court

26   granted Defendants' motion to dismiss Plaintiffs' causes of action for deprivation of property

27   without due process and for *Monell* liability, and gave Plaintiffs leave to amend those causes of

28   action.  *Id.*  The Court also dismissed Plaintiffs' cause of action for strict liability for bailors

1   without leave to amend.  *Id.*  The Court otherwise denied Defendants' motion to dismiss the

2   FAC.  *Id.*

3          Thereafter, Plaintiffs filed the SAC, which contains causes of action for (1) retaliation in

4   violation of the First Amendment; (2) unreasonable seizure in violation of the Fourth Amendment;

5   (3) deprivation of property without procedural due process in violation of the Fourteenth

6   Amendment; (4) *Monell* liability; (5) violation of the Bane Act; (6) conversion or intentional

7   deprivation of property; and (7) trespass to land.  Dkt. 35.  The present motion to dismiss is

8   directed solely to the fourth cause of action for *Monell* liability.  Dkt. 36.  Defendants also argue

9   that the SAC is untimely because it was filed one day after the deadline set by the Court (*id.* at 6),

10  but because Plaintiffs have shown excusable neglect for the late filing (*see* Dkt. 37 at 5-7), the

11  Court will consider the SAC as if timely filed.

12  **II.      DISCUSSION**

13         Defendants argue that the fourth cause of action for *Monell* liability, which is asserted only

14  against the Agency, should be dismissed under Rule 12(b)(6) because Plaintiffs have not

15  adequately alleged the existence of an Agency custom or policy that resulted in the deprivation of

16  Plaintiffs' constitutional rights.  Dkt. 36 at 6-7.  As explained in the Order Dismissing FAC, to

17  hold the Agency liable under section 1983 Plaintiffs must show: (1) they possessed a

18  constitutional right of which they were deprived; (2) the Agency had a policy; (3) the Agency's

19  policy amounts to deliberate indifference to Plaintiffs' constitutional right; and (4) the policy is the

20  moving force behind the constitutional violation.  Dkt. 34 at 9 (citing *Oviatt v. Pearce*, 954 F.2d

21  1470, 1474 (9th Cir. 1992) and *Tovar v. City of San Jose*, No. 5:21-cv-02497-EJD, 2021 WL

22  6126931, at *4 (N.D. Cal. Dec. 28, 2021)).  Plaintiffs may show the Agency's policy by showing

23  that: (1) the Agency had an official policy; (2) the Agency had a pervasive practice or custom;

24  (3) the Agency failed to adequately train, supervise, or discipline; or (4) the violation resulted

25  from a decision or act of a final decisionmaker.  Dkt. 34 at 9 (citing *Horton by Horton v. City of

26  Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019)).  The Court dismissed Plaintiffs' *Monell* claim

27  in the FAC on the grounds that the FAC failed to allege the substance of the Agency's alleged

28  policies or customs, failed to allege that the policies/customs are persistent or widespread, failed to

United States District Court
Northern District of California

2

1    show how an allegedly deficient policy or other action of the Agency caused the constitutional

2    injuries Plaintiffs allege, and failed to allege facts showing action or ratification by an Agency

3    decisionmaker.  Order Dismissing FAC at 12.

4           Defendants assume for purposes of the present motion that Plaintiffs have adequately

5    alleged a constitutional violation.  Dkt. 36 at 7.

6           As a preliminary matter, Defendants argue that the SAC, like the FAC, fails to make clear

7    whether Plaintiffs' *Monell* claim is based on the *existence* of a policy or the *absence* of a policy.

8    Dkt. 36 at 7; *see also* Order Dismissing FAC at 11.  The Court agrees with Defendants that the

9    SAC remains unclear as to what policies Plaintiffs claim the Agency had, or should have had.  The

10   SAC lists policies the Agency "must have."  SAC ¶ 127.  The SAC then alleges that the Agency

11   "(a) failed to adopt a required policy, (b) adopted a policy that was not constitutionally sufficient,

12   (c) adopted a constitutionally sufficient policy that it disregarded as a matter of custom as known

13   to its policy maker, and (d) its policy maker made a decision in this case to disregard

14   constitutional requirements with now lawful basis."  *Id.* ¶ 128.  The SAC also alleges that "[i]n

15   addition or in the alternative, considering each of the above-specified policies needed to protect

16   live animals such as those at issue in this case, (e) County Agency failed to train, supervise, and

17   discipline its employees so that they knew when and how to implement the required policies."  *Id.*

18   Several allegations in the *Monell* claim allege that the Agency either had or failed to have such

19   policies.  *See, e.g., id.* ¶ 131 ("County Agency enacted … or County Agency [] fail[ed] to enact"

20   policies); ¶ 132 ("The policies or lack of policies that caused Plaintiffs' injuries"); ¶ 139 ("County

21   Agency adopted and implemented unconstitutional policies or failed to adopt and implement

22   constitutional policies.").  In their opposition to the present motion to dismiss, Plaintiffs "confirm

23   that their claims are based, in significant or total part, on the *absence* of policies in five areas."

24   Dkt. 37 at 7.  Elsewhere in their opposition, Plaintiffs argue that they have pleaded "four plausible

25   categories of policy failures because one or more of them could be at issue in this case" and "[a]t

26   this stage in the proceedings, Plaintiffs cannot specify which of their injuries were caused by

27   which category of an injurious County Agency policy:  one that was needed but  not adopted,

28   adopted but constitutionally insufficient, constitutionally sufficient but disregarded as a matter of

United States District Court
Northern District of California

1    custom, or disregarded at the hands of the policymaker or decisionmaker." *Id.* at 3 (citing SAC ¶¶

2    127-128).

3        The Court need not decide whether these inexact allegations regarding the existing or

4    absent policies/customs are sufficient because the SAC's allegations regarding the Agency's

5    policies/customs do not overcome other deficiencies the Court found in the Order Dismissing

6    FAC. As Defendants note (and Plaintiffs do not dispute), the *Monell* claim in the SAC (like the

7    *Monell* claim in the FAC) seeks to establish the required Agency policy/custom by alleging

8    (1) inadequate training and/or supervision; and/or (2) acts of or ratification by a final policy

9    maker. Dkt. 36 at 7; Dkt. 37 at 7; *see also* SAC ¶¶ 126-139. The Court now addresses

10   Defendants' arguments that each category of allegations remain deficient.

11       A.    **Inadequate Training/Supervision**

12       In the Order Dismissing FAC, the Court noted that the *Monell* claim in the FAC focused

13   only on Defendants' conduct with respect to the raids on Hen Harbor at issue in this case and held

14   that "[w]here, as here, not a single similar incident to those involving the plaintiffs is alleged …

15   the allegations are insufficient to sustain a *Monell* cause of action." Order Dismissing FAC at 10

16   (internal punctuation and citations omitted). The Court also noted that the FAC failed to factually

17   allege how the Agency's alleged inadequate training or supervision cause the alleged unreasonable

18   searches or due process violation. *Id.* at 11.

19       In moving to dismiss the *Monell* claim in the SAC, Defendants contend that like the FAC,

20   the SAC does not factually allege a pattern of similar constitutional violations by untrained

21   employees or how the Agency's allegedly inadequate training or supervision caused the alleged

22   unreasonable seizures or procedural due process violations. Dkt. 36 at 8-10. Plaintiffs respond by

23   requesting that the Court reconsider its earlier ruling. Dkt. 37 at 10. Plaintiffs admit that the

24   allegations in the SAC "presently contemplate only their history with County Agency because

25   there has been no discovery at this stage in the proceedings" but "the facts at the heart of the SAC

26   occur as a series of events that span almost two months, involve a significant number of County

27   Agency's employees, and involve some employees repeatedly." *Id.* at 11. Plaintiffs argue that

28   their injuries "spanned a minimum of fifty-two days from the date of the first raid through the

1    return of several animals and computer [sic]" but "given 211 animals still have not been

2    returned . . . her injuries are continuous and unabated." *Id.* at 13.  According to Plaintiffs, "[w]hile

3    the Courts have looked to see if multiple incidents exist, there is no requirement that the incidents

4    be against distinct persons." *Id.*

5         After reviewing Plaintiffs' argument and the cases they cite, the Court finds no reason to

6    reconsider its earlier ruling.  Plaintiffs cite *Motley v. Smith* and *Nelson v. City of Los Angeles* for

7    the proposition that "[m]ultiple incidents involving the same plaintiff and several governmental

8    employees are actionable under *Monell*."  Dkt. 37 at 13-14.  However, those cases are

9    distinguishable.  *Motley* involved claims by two Plaintiffs alleging that a police department

10   violated their constitutional rights in handling incidents involving domestic violence.  *Motley v.*

11   *Smith*, No. 1:15-cv-00905, 2016 WL 3407658, at *1-3 (E.D. Cal. June 20, 2016).  The domestic

12   violence incidents involving the named plaintiffs occurred on different dates and involved

13   different people.  *Id.*  The plaintiffs' complaint also included "multiple allegations concerning

14   non-party victims." *Id.* at *3.  In denying a motion to dismiss the *Monell* claim, the court stated

15   that "[h]ere, plaintiffs' complaint points to multiple incidents suggesting the existence of a custom

16   or practice of denying police protection to abused women because of their gender. *Id.* at *9.

17   Thus, *Motley* did not involve a single course of conduct regarding related plaintiffs, like this case.

18   Similarly, in the other case cited by Plaintiffs, the court found that "[t]o the extent Plaintiffs allege

19   that the jail had a custom of retaliating against inmates in response to their protected conduct …

20   they have arguably alleged sufficient facts to state a *Monell* claim." *Nelson v. City of Los Angeles,*

21   No. CV 11-5407-PSG (JPR), 2015 WL 1931714, at *18 (C.D. Cal. Apr. 28, 2015).  Plaintiffs'

22   SAC in this case does not contain similar allegations of the Agency's conduct towards parties

23   other than Plaintiffs themselves.  As the court explained in *Nelson*, "isolated incidents, directed

24   toward a single plaintiff, are insufficient to establish an unlawful policy or practice. *Id.* at *17.

25         It is well-settled that "[a] policy or practice requires more than a few occurrences of

26   challenged conduct.  A single or even a few isolated and sporadic incidents of unconstitutional

27   conduct are not enough to impose municipal liability under Section 1983 … Liability must be

28   founded upon practices of sufficient duration, frequency and consistency that the conduct has

United States District Court
Northern District of California

1   become a traditional method of carrying out policy." *Prebilich v. City of Cotati*, No. 3:21-CV-

2   02380-JD, 2021 WL 5964597, at *2 (N.D. Cal. Dec. 16, 2021) (citing *Gant v. Cty. of Los Angeles*,

3   772 F.3d 608, 618 (9th Cir. 2014) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985);

4   *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks omitted)). Here,

5   although Defendants' challenged conduct towards Plaintiffs did not all occur as a single event on a

6   single day, all of the conduct was part of a single investigation involving Plaintiffs. As such,

7   Plaintiffs have failed to identify practices of "sufficient duration, frequency, and consistency" to

8   amount to an Agency policy or custom.

9           **B.    Policymaker Action or Ratification**

10          Defendants argue that the SAC again fails to adequately plead knowledge or approval by

11  policymakers of any unconstitutional conduct. Dkt. 36 at 20-21. The SAC alleges that individual

12  Defendants Sobel and Stosuy are policymakers and that therefore the Agency is liable under a

13  ratification theory. *See* SAC ¶¶ 134, 135, 138. Defendants move to dismiss on the grounds that

14  neither individual is adequately plead to be a final policymaker. Dkt. 36 at 18-19. Plaintiffs'

15  opposition to the motion to dismiss addresses only the status of Sobel as an alleged policymaker,

16  and does not address Stosuy. Dkt. 37 at 19-20. Accordingly, Plaintiffs' *Monell* claim is dismissed

17  to the extent it is premised on Stosuy being a final policymaker. *See Lee v. Retail Store Employee*

18  *Bldg. Corp.*, No. 15-CV-04768-LHK, 2017 WL 346021, at *20 (N.D. Cal. Jan. 24, 2017) (denying

19  leave to amend  where "Plaintiffs' failure to even argue the issue in their opposition indicates a

20  waiver of this claim").

21          As to Sobel's liability, the substantive allegations in the background section and *Monell*

22  claim portions of the SAC are as follows:

23          •   Sobel is general manager of the Agency. SAC ¶ 6.

24          •   Sobel "knew of, approved, and directed the actions by County Agency employees

25              as complained about herein" and "develops and helps to develop the several

26              County Agency policies and customs complained about herein." *Id.* ¶ 7.

27          •   The Santa Cruz Society for Prevention of Cruelty to Animals forwarded a

28              complaint Huemer made about the Agency to Sobel. *Id.* ¶ 39.

- Sobel was present at and "personally supervised or oversaw" the second raid of Hen Harbor on October 2, 2020.  *Id.* ¶ 86.

- While the Agency held hundreds of Hen Harbor animals in custody, Sobel was informed that no Agency employee had discussed any ongoing medical needs of the seized birds with Huemer.  *Id.* ¶ 98.  The birds' medical records were sent to Sobel on October 9, 2020.  *Id.* ¶ 100.

- The Agency's policymakers "include the board of directors and its general manager, GM Sobel."  *Id.* ¶ 126.

- Sobel was "present at the second raid when only healthy animals were observed and seized, and when Plaintiffs begged [her] for the return of their healthy animals as well as their sick animals."  SAC ¶ 134.

- "[H]aving been made aware of the constitutional violations of its employees, County Agency policymakers ratified their constitutional conduct and failed to take prompt steps to minimize the harm suffered by Ms. Huemer."  *Id.* ¶ 135.

- "Policymakers include (without limitation) GM Sobel, Supervisor Stosuy, County Agency's board of directors, as well as others who may be identified as having policy-making authority, and who enacted, adopted, followed, and/or ratified such challenged County Agency policies."  *Id.* ¶ 138.

Some of Plaintiffs' allegations concerning Sobel focus on her presence at the second raid and her alleged inaction in response to Huemer's complaints or requests for the birds' return. However, as the Court explained in the Order Dismissing FAC, allegations of inaction do not support a ratification theory because "the mere failure to overrule a subordinate's actions or failure to discipline a subordinate does not amount to ratification of their allegedly unconstitutional actions."  Order Dismissing FAC at 12 (citing *Sweiha v. County of Alameda*, No. 19-cv-03098-LB, 2019 WL 4848227, at *5 (N.D. Cal. Oct. 1, 2019)).  Other allegations regarding Sobel focus on her title as General Manager of the Agency, but absent other factual allegations the Court cannot infer from Sobel's title alone that she is a policymaker.  *See Lemmons v. Cty. of Sonoma*, No. 16-cv-04553-WHO, 2018 WL 452198, at * 7 (N.D. Cal. Jan. 17, 2018).  Plaintiffs' remaining

1    allegations regarding Sobel are conclusory assertions that she is a policymaker involved in the

2    development of Agency policy.  But these conclusory allegations are insufficient to establish that

3    Sobel knew of a constitutional violation and actually approved it, especially in light of the absence

4    of any allegations of similar incidents (as discussed in Section II.A., *supra*).  *See Sweiha,* 2019

5    WL 4848227, at *5; *see also Estate of Chivrell v. City of Arcata*, --- F. Supp. 3d ---, 2022 WL

6    3691029, at * 5 (N.D. Cal. Aug, 25, 2022) (dismissing *Monell* ratification claim where

7    "conclusory allegations simply track the legal standard and do not provide sufficient detail for the

8    Court [to] draw the reasonable inference that [the defendant] is liable for the misconduct alleged").

9    **III.    CONCLUSION**

10           For the foregoing reasons, the *Monell* claim in the SAC is **DISMISSED**.  Because

11   Plaintiffs have had three opportunities to plead a *Monell* claim and have not offered any reason to

12   believe the deficiencies in that claim can be cured by yet another amendment, the dismissal is

13   **WITH PREJUDICE.**

14           The Court will hold an Initial Case Management Conference by Zoom on **November 8,**

15   **2022 at 9:30 a.m.**  A Joint Case Management statement is due by **November 1, 2022.**

16           **SO ORDERED.**

17   Dated: October 11, 2022

18

19

20   SUSAN VAN KEULEN
     United States Magistrate Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California