UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ARIANA HUEMER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA CRUZ COUNTY ANIMAL SHELTER FOUNDATION, et al.,<br><br>Defendants. | Case No.  21-cv-07372-SVK<br><br>**\*CORRECTED\***<br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY  JUDGMENT**<br><br>Re: Dkt. Nos. 93, 102 |

Plaintiff Ariana Huemer ("Huemer") is the founder and president of an animal rescue and rehabilitation organization, Plaintiff Eeyore's Hen Harbor ("Hen Harbor"), located in the Santa Cruz Mountains.  This case involves the seizure by Defendant Santa Cruz Animal Shelter Foundation ("Shelter"), an agency of the County of Santa Cruz, of over 300 chickens and other birds in two searches of Hen Harbor in an investigation concerning suspected animal welfare violations.  Ultimately, the County did not institute charges against Huemer, but several dozen birds were never returned to Plaintiffs.  After Plaintiffs voluntarily dismissed several claims and defendants, Plaintiffs' remaining claims against the Shelter and various Shelter employees are a claim under the Fourth Amendment for unreasonable seizure and state law claims for violation of the Bane Act and conversion.

Now before the Court are the Parties' cross-motions for summary judgment or partial summary judgment.  Dkt. 93 ("Defendants' MSJ"); Dkt. 102 ("Plaintiffs' MSJ").  All Parties have consented to the jurisdiction of a magistrate judge.  Dkt. 9, 18, 33, 72.  The Court held an in-person hearing on May 28, 2024.  After considering the Parties' briefs and their arguments at the hearing and for the reasons discussed below, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.     BACKGROUND

Plaintiff Ariana Huemer ("Huemer") founded Plaintiff Eeyore's Hen Harbor ("Hen Harbor") in 2012, and she is the president, director, and principal employee of the organization. Dkt. 58 (Third Amended Complaint) ¶¶ 4, 5, 17.  Hen Harbor, a nonprofit corporation located in Felton, California, rescues, rehabilitates, and provides long-term housing for abused and neglected chickens, other birds, and occasionally other animals.  *Id.* ¶¶ 5, 17.

Defendant Santa Cruz Animal Shelter (the "Agency") is an agency of the County of Santa Cruz.  *Id.* ¶ 6.  Defendant Melanie Sobel ("Sobel") is the General Manager of the Agency.  *Id.* ¶ 7. Sobel is the direct supervisor of Defendant Todd Stosuy ("Stosuy"), who is Field Service Manager of the Agency.  *Id.* ¶¶ 7-8.  Defendant Carlos Montes ("Montes") works for the Agency as Animal Control Officer II.  *Id.* ¶ 9.  Sobel, Stosuy, and Montes are referred to as the "Individual Defendants."  Three other Defendants named in the Third Amended Complaint—Dana Gleason DVM, Hillary Stern DVM, and Anne Terry DVM—have been dismissed.  *Id.* ¶¶ 10-12; Dkt. 88, 116.

According to Plaintiffs, since at least 2011, Huemer has frequently and publicly criticized multiple policies and actions of the Agency and its employees.  Dkt. 58 ¶¶ 18, 39-47.  During the August 2020 CZU fire, which burned tens of thousands of acres in Santa Cruz County, Huemer allegedly warned the public not to take their animals to the Agency because it had a policy or propensity to kill healthy animals, and she warned that the Agency would not attempt to rescue animals  *Id.* ¶¶ 35, 46.  Huemer offered to do what she could to rescue animals the Agency refused to help, and she claims to have rescued approximately 100 chickens during the fire by bringing them to Hen Harbor until their owners could reclaim them after forced evacuations were lifted.  *Id.*

On September 9, 2020, Stosuy received an email from Daphna Nachminovitch, a Senior Vice President in the Cruelty Investigations Department of People for the Ethical Treatment of Animals (PETA), that relayed concerns about Hen Harbor, including a potential hoarding situation.  Dkt. 99 ¶¶ 2-3; Dkt. 99-1.  Between September 10 and 12, 2020, Montes investigated the matter by speaking and/or emailing with at least nine people.  Dkt. 96 ¶¶ 2-11; Dkt. 96-1 to 96-9.

United States District Court
Northern District of California

1    On September 21, 2020, after consulting with a Santa Cruz County Assistant District

2    Attorney, Montes submitted an application for a search warrant, including a probable cause

3    affidavit.  Dkt. 96-14.  The affidavit described reports from several individuals concerning

4    conditions at Hen Harbor.  *See, e.g., id.* at ECF pp. 4-16.  The affidavit also described Montes's

5    own visit to the property on August 24, 2020 in connection with evacuations of the surrounding

6    area.  *Id.* at ECF pp. 8-9.  Plaintiffs' counsel explained at the hearing that Huemer was not present

7    during Montes's August visit to the property.

8    On or about September 21, 2020, a Santa Cruz County Superior Court judge signed the

9    search warrant.  Dkt. 96-15.  The search warrant commanded the search of "[a]ll buildings on the

10   property, and/or the curtilage of the property known as Hen Harbor at 7331 West Zayante Road in

11   Felton California 95018, where animals may be located as well as articles of personal property

12   tending to establish the identity of the person in control of the premises, attics, basements."  *Id.* at

13   ECF p. 2.  The search warrant authorized the seizure of "all animals (alive or dead)," among other

14   items.  *Id.*

15   On September 21, 2020, Defendants executed the search warrant at Hen Harbor and seized

16   240 fowl, as well as two goats and various other items.  Dkts. 96-16, 96-18.

17   Defendants were not able to seize all the birds at Hen Harbor during the September search.

18   *See* Dkt. 96-20 at ECF p. 6.  On or about September 30, 2020, after again consulting with an

19   Assistant District Attorney, Montes submitted an application for a second search warrant, along

20   with a probable cause affidavit.  Dkt. 96-20.  A Superior Court judge issued the warrant on

21   October 1, 2020.  *Id.*

22   Defendants executed the second search warrant on October 2, 2020 and seized 80 birds at

23   Hen Harbor.  Dkt. 96-22.

24   In October 2020, Huemer obtained a post-seizure hearing concerning each seizure pursuant

25   to California Penal Code § 597.1.  *See* Dkt. 107-2, 107-3.  After each hearing, the hearing officer

26   ordered that the seized animals be returned to Huemer as soon as practicable.  *Id.*

27   Defendants acknowledge that some birds died while in Defendants' possession and that of

28   the 320 birds seized in the two raids, "[n]o less than 267 birds were returned to Ms. Huemer."

1   Dkt. 93 at 9, 12, 24.  Defendants do not dispute that other animals were never returned to

2   Plaintiffs.  *See id.*

3       Huemer filed this lawsuit on September 22, 2021, asserting causes of action for violations

4   of the First, Fourth, and Fourteenth Amendments; *Monell* liability; liability under the California

5   Unruh Act, Bane Act, and unfair competition statutes; trespass to land; conversion; and strict

6   liability.  Dkt. 1 (corrected at Dkt. 13).  After the Court granted two motions to dismiss with leave

7   to amend (Dkt. 34, 40), Plaintiff filed the Third Amended Complaint.  Dkt. 58.  Three causes of

8   action in the Third Amended Complaint are no longer at issue:  Plaintiffs dismissed their first

9   (First Amendment retaliation) and sixth (trespass) causes of action (Dkt. 90), and they have

10  dismissed all Defendants named in the third cause of action (Fourteenth Amendment – due

11  process) (Dkt. 88, 116).

12      Defendants now seek summary judgment, or in the alternative partial summary judgment,

13  on all of Plaintiffs' remaining causes of action:  the second cause of action (unreasonable seizure

14  in violation of the Fourth Amendment – against the Individual Defendants); third cause of action

15  (violation of the Bane Act, Cal. Civ. C. § 52.1 – against all Defendants); and fifth cause of action

16  (conversion – against all Defendants), as well as Plaintiffs' claims for emotional distress damages

17  and punitive damages.  Dkt. 93.

18      In Plaintiffs' cross-motion for partial summary judgment, they seek summary judgment on

19  the issues of the validity of the September and October search warrants and the lawfulness of the

20  seizures pursuant to the two warrants.  Dkt. 102.

21

22  **II.     LEGAL STANDARD**

23      A party may move for summary judgment on any claim or defense, or for partial summary

24  judgment on part of a claim or defense.   Fed. R. Civ. P. 56(a).  Summary judgment is appropriate

25  if the moving party shows that there is no genuine dispute as to any material fact and the party is

26  entitled to judgment as a matter of law.  *Id.*  A fact is material if it may affect the outcome of the

27  case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985).  A genuine dispute of material

28  fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

United States District Court
Northern District of California

1   party.  *Id.*

2          The party moving for summary judgment bears the initial burden of informing the court of

3   the basis for the motion and identifying portions of the pleadings, depositions, answers to

4   interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

5   fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

6          Where the party moving for summary judgment has the burden of persuasion at trial, such

7   as where the moving party seeks summary judgment on its own claims or defenses, the moving

8   party must establish "beyond controversy every essential element of its [claim]."  *So. Cal. Gas Co.*

9   *v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  Where the moving

10  party seeks summary judgment on a claim or defense on which the opposing party bears the

11  burden of persuasion at trial, "the moving party must either produce evidence negating an essential

12  element of the nonmoving party's claim or defense or show that the nonmoving party does not

13  have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

14  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the

15  moving party meets its initial burden, the burden shifts to the nonmoving party to produce

16  evidence supporting its claims or defenses.  *Id.* at 1103.  If the nonmoving party does not produce

17  evidence to show a genuine issue of material fact, the moving party is entitled to summary

18  judgment.  *Celotex*, 477 U.S. at 323.

19          "The court must view the evidence in the light most favorable to the nonmovant and draw

20  all reasonable inferences in the nonmovant's favor."  *City of Pomona v. SQM N. Am. Corp.*, 750

21  F.3d 1036, 1049 (9th Cir. 2014).  However, the party opposing summary judgment must direct the

22  court's attention to "specific, triable facts."  *So. Cal. Gas*, 336 F.3d at 889.  "[T]he mere existence

23  of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a motion for

24  summary judgment.  *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not

25  lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

26  *City of Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

27  *Corp.*, 475 U.S. 574, 587 (1986)).

28

United States District Court
Northern District of California

5

### III.    DEFENDANTS' MOTION FOR SUMMARY JU`DGMENT OR PARTIAL SUMMARY JUDGMENT

#### A.    EVIDENTIARY ISSUES

In Defendants' reply in support of their motion for summary judgment, they object to the following statement in Plaintiffs' opposition brief:  "Disregarding the overwhelming numbers of healthy chickens, on the first day, Defendants chased, captured, and thus stressed the entire flock."  Dkt. 106 at 1 (citing Dkt. 101 at 3:5-6).  In support of this statement in their brief, Plaintiffs cite this passage in the transcript of Defendant Montes's deposition:

> Q:    How many birds did you capture that first day?
>
> A:    From what I can remember, 200 – between 250 and 260.
>
> Q:    The numbers I've seen were 240; does that accurate (sic)?
>
> A:    It was approximately 240.

Dkt. 101 at 3:5-6 (citing Dkt. 107-1 at 131:4-9).

According to Defendants, the assertion in Plaintiffs' opposition brief violates Civil Local Rule 7-5(a), which requires that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record."  Dkt. 106 at 1.  Defendants request that the Court disregard Plaintiffs' assertion.  Dkt. 106 at 1.

Defendants are correct that the cited deposition testimony does not support the assertion in Plaintiffs' brief and therefore the Court disregards that assertion in deciding the present motions.

#### B.    FOURTH AMENDMENT CLAIM

Plaintiffs' second cause of action alleges that the Individual Defendants unreasonably seized animals in the first and second searches of Hen Harbor, in violation of the Fourth Amendment.  Dkt. 58 ¶¶ 118-121.  Plaintiffs' original opposition to Defendants' motion for summary judgment on the Fourth Amendment claim focused primarily on the alleged lack of probable cause for the September and October search warrants and was premised on Plaintiffs' mistaken assumption that Defendants had not submitted an affidavit of probable cause in support of the applications for those search warrants.  *See* Dkt. 101 at 6-10.  After briefing on Defendants' summary judgment motion was completed, Plaintiffs formally withdrew this argument and

stipulated for purposes of that motion that "Defendant Carlos Montes ('Officer Montes') <u>did submit</u> a Statement of Probable Cause in support of the September 21 Warrant (referenced therein as 'September Application') and October 1 Warrant (referenced therein as 'October Application') to the two magistrates who subsequently issued the September Warrant and October Warrant." Dkt 117 at 2 (emphasis in original).  Accordingly, as reflected in the briefs and as confirmed at the hearing, Plaintiffs' only remaining argument with respect to their Fourth Amendment claim is that the September and October warrants were overbroad.  *See* Dkt. 101 at 10-13.  Defendants respond by arguing that the warrants were not overbroad and that in any event, they are entitled to qualified immunity with respect to the warrants.  *See* Dkt. 93 at 14-21; Dkt. 106 at 1-11.

### 1.    Overbreadth

Plaintiffs argue that by permitting the seizure of "all animals (alive or dead)"—regardless of whether the animals were healthy or sick—the warrants were overbroad because "nothing in the Warrants tied the seizures to animals that could provide evidence in any way of a crime." *Id.* at 10-11.  The Fourth Amendment protects against "unreasonable searches and seizures" and provides that no warrants shall issue without "particularly describing … the persons or things to be seized."  "To be reasonable under the Fourth Amendment, a search warrant must not be overbroad; its breadth must be limited to the scope of the probable cause on which the warrant was based." *Blight v. City of Manteca*, 944 F.3d 1061, 1066 (9th Cir. 2019) (citing *In re Grand Jury Subpoenas*, 926 F.2d 847, 856-57 (9th Cir. 1991)).  This inquiry involves determining "whether the issuing judge had a substantial basis to conclude that the affidavit supporting the search warrant established probable cause," which "is not a high bar."  *Blight*, 944 F.3d at 1066 (citations omitted).  Accordingly, the issue of whether a search warrant is overbroad is tied closely to the question of whether probable cause supported issuance of the warrant.

As noted above, Plaintiffs have belatedly admitted that Defendant Montes submitted sworn statements of probable cause in applying for the September and October Warrants, and they have acknowledged that "[t]his effectively withdraws Plaintiffs' arguments 'The September Warrant is not supported by probable cause" … and 'The October Warrant is not submitted by probable cause'" in their opposition brief.  Dkt. 117 at 3.  Accordingly, it appears that Plaintiffs have

7

1    largely, if not entirely, abandoned their argument that the warrants were not supported by probable

2    cause.  Plaintiffs nevertheless continue to assert that the search warrants were overbroad because

3    they authorized the seizure of healthy animals which, according to Plaintiff, are not evidence of

4    any suspected crime.  *See* Dkt. 101 at 15-16.

5         Plaintiffs' argument misses the main point under *Blight*, which is whether the scope of the

6    warrant is tied to the showing of probable cause upon which the warrant was based.  *See Blight*,

7    944 F.3d at 1066.  Plaintiffs in essence argue that there was no probable cause to allow the seizure

8    of healthy animals.  To evaluate this argument, "[t]he superordinate and controlling issue here is

9    thus whether there was probable cause" to seize healthy animals.  *See id.*  As the Montes probable

10   cause affidavits make clear, Defendants sought the search warrants as part of their investigation of

11   possible violations of California Penal Code §§ 597(b) and 597.1(a)(1).  *See* Dkt. 93-14 at ECF

12   pp. 3-4; Dkt. 93-20 at ECF pp. 3-4.  Penal Code § 597(b), entitled "Cruelty to animals," provides:

> Except as otherwise provided in subdivision (a) or (c), a person who overdrives,
> overloads, drives when overloaded, overworks, tortures, torments, deprives of
> necessary sustenance, drink, or shelter, cruelly beats, mutilates, or cruelly
> kills an animal, or causes or procures an animal to be so overdriven, overloaded,
> driven when overloaded, overworked, tortured, tormented, deprived of necessary
> sustenance, drink, shelter, or to be cruelly beaten, mutilated, or cruelly killed; and
> whoever, having the charge or custody of an animal, either as owner or otherwise,
> subjects an animal to needless suffering, or inflicts unnecessary cruelty upon the
> animal, or in any manner abuses an animal, or fails to provide the animal with
> proper food, drink, or shelter, or protection from the weather, or who drives, rides,
> or otherwise uses the animal when unfit for labor, is, for each offense, guilty of a
> crime punishable pursuant to subdivision (d).

Penal Code § 597.1(a)(1), which concerns "Failure to care for animals," provides:

> Every owner, driver, or keeper of any animal who permits the animal to be in any
> building, enclosure, lane, street, square, or lot of any city, county, city and county,
> or judicial district without proper care and attention is guilty of a misdemeanor. Any
> peace officer, humane society officer, or animal control officer shall take possession
> of the stray or abandoned animal and shall provide care and treatment for the animal
> until the animal is deemed to be in suitable condition to be returned to the owner.
> When the officer has reasonable grounds to believe that very prompt action is
> required to protect the health or safety of the animal or the health or safety of others,
> the officer shall immediately seize the animal and comply with subdivision (f). In all
> other cases, the officer shall comply with the provisions of subdivision (g). The full
> cost of caring for and treating any animal properly seized under this subdivision or

United States District Court
Northern District of California

8

pursuant to a search warrant shall constitute a lien on the animal and the animal shall not be returned to its owner until the charges are paid, if the seizure is upheld pursuant to this section.

Both code sections capture a wide range of animal mistreatment, including deficient environments for the keeping of animals, and do not hinge on the binary question of whether an animal is healthy or sick. For example, section 597(b) extends liability to one who "fails to provide [an] animal with proper food, drink, or shelter, or protection from the weather." The probable cause affidavits submitted in connection with the search warrant applications detailed not only reports of sick and deceased chickens, but also chickens caged in overcrowded conditions, food for the chickens and turkeys in open containers with chickens sitting in them and rats nearby, and broken and dilapidated chicken coops. *See, e.g.,* Dkt. 96-14 at ECF pp. 6-7; Dkt. 96-20 at 5-6.[1] By allowing the seizure of "all animals (alive or dead)," the search warrants were sufficiently tied to the showing of probable cause on which the warrants were based and therefore are not overbroad.

### 2.  Qualified immunity

The Individual Defendants argue that even if Plaintiffs had identified a triable issue of fact that would preclude summary judgment on their Fourth Amendment claim, the Individual Defendants are entitled to qualified immunity. *See* Dkt. 93 at 18-21. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks and citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citations omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful

---

[1] For similar reasons, Plaintiffs' argument regarding the actual number of sick animals seized during the searches fails. *See, e.g.,* Dkt. 101 at 5 (arguing that "the vast majority of animals captured for the first seizure were totally healthy – according to Defendants' own assessments, at most 20 had health concerns and of them, 5 – a mere 1.5% of the Hen Harbor flock – were serious.")

9

official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* (internal quotation marks and citations omitted).

In *Messerschmidt*, the Supreme Court stated that "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922–923 (1984)).  Nonetheless, issuance of a warrant "does not end the inquiry into objective reasonableness," and an exception to qualified immunity exists when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 547 (internal quotations marks and citations omitted).  In explaining this exception, the Supreme Court cited a situation "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (citation omitted).  However, the Supreme Court also explained that "the threshold for establishing this exception is a high one, and it should be," and "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* (internal quotation marks and citations omitted).  The plaintiffs in *Messerschmidt* argued that the case fell into the narrow exception to qualified immunity because the officers who sought the search warrant "failed to provide *any* facts or circumstances from which a magistrate could properly conclude that there was probable cause to seize the broad classes of items being sought," and "[n]o reasonable officer could have presumed that such a warrant was valid. *Id.* at 548.  The Supreme Court rejected that argument.  *Id.*

In their opposition to Defendants' summary judgment motion, Plaintiffs argued that *Messerschmidt* differs from this case on the "key point" that "[t]wo affidavits accompanied Messerschmidt's warrant applications" whereas "[n]o sworn statements were submitted here by Officer Montes or third parties."  Dkt 101 at 14.  As discussed above, Plaintiffs' eleventh-hour

10

admission that Montes did, in fact, submit sworn affidavits in support of the applications for the September and October warrants (*see* Dkt. 117) eliminates this argument for why qualified immunity should not apply. The Montes probable cause affidavit for the September search warrant, which Plaintiffs now acknowledge, also eliminates Plaintiffs' argument that Montes "entirely concealed the August 24, 2020 search he made with no warrant" because the affidavit discusses Montes's August visit to Hen Harbor. *See* Dkt. 93-4 at ECF pp. 8-9.

Plaintiffs' additional argument that the warrants were "facially deficient … in failing to particularize the place to be searched or the things to be seized" (Dkt. 101 at 15) also falls short because as discussed in section III.B.1. above, the warrants in this case satisfy the particularity standard.

As Defendants note and Plaintiffs effectively concede, it was Montes and not the other Individual Defendants (Sobel and Stosuy) who applied for the warrant. Plaintiffs' arguments as to why Sobel and Stosuy are not entitled to qualified immunity assume that Montes is not entitled to immunity and argue that Sobel and Stosuy must also face suit because of their role in Montes's decision to seize animals and their supervision of Montes. Dkt. 101 at 15-16. The foregoing analysis in this section explains why Montes is entitled to qualified immunity. Plaintiffs have offered no facts regarding the roles played by Sobel and Stosuy that would deprive them of qualified immunity on Plaintiffs' Fourth Amendment claim.

Accordingly, all three Individual Defendants are entitled to qualified immunity on Plaintiffs' Fourth Amendment claim, and are therefore entitled to summary judgment on that claim.

### 3.     Collateral estoppel

Having already concluded that Defendants are entitled to summary judgment on Plaintiffs' Fourth Amendment claim, the Court need not reach Defendants' additional argument that Plaintiffs are collaterally estopped from relitigating the legality of the October search because that issue was already decided in a state administrative hearing. *See* Dkt. 93 at 13-14.

### 4.      Conclusion on Fourth Amendment Claim

For the foregoing reasons, the Individual Defendants' motion for summary judgment on the Fourth Amendment claim is **GRANTED.**

### C.      STATE LAW CLAIMS

#### 1.      Bane Act

The Bane Act provides a private cause of action where "a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  Cal. Civ. C. § 52.1(b)(c).  The necessary elements for a Bane Act claim are "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion."  *Lawrence v. City and Cnty. of San Francisco*, 258 F. Supp. 3d 977, 995 (N.D. Cal. 2017) (citing *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)); *see also* Cal. Civ. Code § 52.1(b)-(c).  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law."  *Johnson v. City of San Jose*, 591 F. Supp. 3d 649, 668–69 (N.D. Cal. 2022) (quoting *Simmons v. Superior Ct.*, 7 Cal. App. 5th 1113, 1125 (2016)).  "A Bane Act claim requires a showing of specific intent to violate protected rights, which can be satisfied by reckless disregard of the right at issue.  *Johnson,* 591 F. Supp. 3d at 669 (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017)).

On the first element of a Bane Act claim, for the reasons discussed in section III.B. above, the Court concludes that Defendants did not actually interfere with Plaintiffs' Fourth Amendment rights; nevertheless, under the terms of the Bane Act, an "attempt[] to interfere" with a plaintiff's constitutional rights is sufficient.  *See* Cal. Civ. C. § 52.1(b)(c).  At the hearing, Defendants acknowledged that a Bane Act claim does not rely on a finding of a Fourth Amendment violation.

United States District Court
Northern District of California

1    The remaining question is whether Plaintiffs have established a genuine issue of material

2    fact as to whether the second element of a Bane Act claim is satisfied, *i.e.*, whether Defendants

3    attempted to deprive Plaintiffs of constitutional rights through "threats, intimidation or coercion."

4    At the hearing, Plaintiffs conceded that there was no evidence of a threat by Defendants.

5    However, that leaves open the issue of whether there is a triable issue of fact concerning whether

6    Defendants engaged in the requisite intimidation or coercion.

7    To prove intimidation, the test is "whether a reasonable person, standing in the shoes of the

8    plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat

9    of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010).

10   A Bane Act claim that relies on a theory of coercion requires allegations of "such force, either

11   physical or moral, as to constrain [the plaintiff] to do against his will something he would not

12   otherwise have done." *Herrera v. AllianceOne Receivable Mgmt., Inc.*, 170 F. Supp. 3d 1282,

13   1288 (S.D. Cal. 2016) (citations omitted).

14   Many of the arguments in Plaintiffs' opposition brief as to why Defendants are not entitled

15   to summary judgment on the Bane Act claim are fatally undercut by Plaintiffs' later admission that

16   the September and October 2020 warrant applications were each accompanied by a probable cause

17   affidavit executed by Montes. *See, e.g.,* Dkt. 101 at 18-20 (pointing to "Defendants' execution of

18   a facially invalid search warrant," "Officer Montes's unexplained failure to include his statements

19   of probable cause in the September Application or October Application," and Montes's "fail[ure]

20   to include the manufactured statement of probable cause in either warrant application."). That

21   leaves Plaintiffs' other arguments, which focus on the "totality" of the circumstances, most

22   significantly Montes's August 2020 visit to Hen Harbor while Huemer was not present, and which

23   Plaintiffs contend amount to intimidation or coercion. Specifically, Plaintiffs question the

24   circumstances of Montes's August 2020 visit and argue that because Plaintiffs run an animal

25   shelter, it is intimidating and coercive for animal control to come onto Plaintiffs property, even if

26   Huemer did not learn about it until later, especially in light of Plaintiffs' allegation that the Shelter

27   had been thwarted in previous attempts to enter the property. Plaintiffs also point to the Shelter's

28   conduct in seizing hundreds of mostly healthy animals and not returning some of them.

1    In essence, Plaintiffs argue that from these disparate facts, a reasonable factfinder could

2    infer that Defendants intimidated or coerced Plaintiffs.  On a motion for summary judgment,

3    "inferences may be drawn from a nonmoving party's direct and circumstantial evidence to

4    establish a genuine issue of material fact." *Triton Energy Corp. v. Square D. Co.*, 68 F.2d 1216,

5    1221 (9th Cir. 1995).  However, the direct and circumstantial evidence must be "of sufficient

6    quantum or quality" to support such an inference. *Id.; see also Serv., Inc. v. Pac. Elec.*

7    *Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment inquiry "focuses on

8    whether the nonmoving party has come forward with sufficiently specific facts from which to

9    draw reasonable inferences about other material facts that are necessary elements of the

10   nonmoving party's claim).  Here, Plaintiffs have offered little explanation, much less evidence, of

11   why it would be reasonable to infer that they were intimidated or coerced by Defendants' actions.

12   Even if the evidence before the Court was of sufficient quantum or quality to support an

13   inference that Defendants' conduct intimidated or coerced Plaintiffs, however, the "essence" of

14   Plaintiffs' Bane Act claim is still missing because they have not shown that Defendants' purported

15   intimidation or coercion "tried to or did prevent the plaintiff from doing something he or she had

16   the right to do under the law or to force the plaintiff to do something that he or she was not

17   required to do under the law." *Johnson*, 591 F. Supp. 3d at 668–69 (emphasis); *see also Est. of*

18   *Crawley v. Kings Cnty.*, No. 1:13-CV-02042-LJO, 2014 WL 2174848, at *14 (E.D. Cal. May 23,

19   2014), report and recommendation adopted, No. 1:13-CV-02042-LJO, 2014 WL 2801046

20   (E.D. Cal. June 19, 2014) ("the type of conduct the Bane Act was intended to prevent" is that

21   which "force[s] [plaintiff] to do something that he or she was not required to do under the law").

22   This is not a situation where Defendants, for example, coerced or intimidated Huemer into

23   allowing them to search Hen Harbor without a warrant.  *See, e.g., Freeman v. Mata*, No. EDCV

24   22-1732 JGB (KKx), 2023 WL 4291850, at *16 (C.D. Cal. Apr. 27, 2023) (on motion to dismiss,

25   holding that plaintiff had plausibly stated a Bane Act violation by alleging that a search of his

26   backpack was facilitated by intimidation and/or coercion where several armed police stopped him

27   for no reason and asked to "check" him); *Est. of Crawley*, 2014 WL 2174848, at *14 (on motion to

28   dismiss, finding sufficient allegations that defendants intimidated plaintiff by forcibly entering

1    home despite plaintiff's lack of consent).  Here, Plaintiffs do not identify any action they took, or

2    were prevented from taking, as a result of Defendants' allegedly intimidating or coercive conduct.

3         Accordingly, Defendants' motion for summary judgment on Plaintiffs' Bane Act claim is

4    **GRANTED**.

5                    **2.    Conversion**

6         Plaintiffs' fifth cause of action for conversion is based on Defendants' failure to return

7    dozens of Plaintiffs' birds seized in the September and October 2020 searches of Hen Harbor.

8    *See* Dkt. 58 ¶¶ 131-134.  Defendants admit that at least 318 birds were seized from Plaintiffs (240

9    birds in the first search and 78 birds in the second search).[2]  Defendants also acknowledge that

10   some birds died while in Defendants' possession and that "[n]o less than 267 birds were returned

11   to Ms. Huemer."  Dkt. 93 at 9, 12, 24.  Thus, despite Defendants' careful wording, it appears that

12   at least 51 birds were seized but not returned.

13        The elements of a claim for conversion under California law are:  "(a) plaintiff's ownership

14   or right to possession of personal property, (b) defendant's disposition of property in a manner

15   inconsistent with plaintiff's property rights, and (c) resulting damages."  *Voris v. Lampert*, 7 Cal.

16   5th 1141, 1150 (2019) (citations omitted).  Defendants challenge the merits of Plaintiffs'

17   conversion claim on several grounds.

18                    **a.    Ownership or possession**

19        In their opening summary judgment brief, Defendants argue that "Ms. Huemer cannot

20   demonstrate ownership over all of the at-issue property."  Dkt. 93 at 24.  In support of their

21   argument, Defendants cite Huemer's deposition testimony in which she stated that not all of the

22   birds at Hen Harbor belonged to her.  *Id.* (citing Dkt. 94-4 at 35:19-37:13; 40:16-41:3).  Plaintiffs

23   counter this argument by correctly pointing out that they do not need to prove ownership, only the

24   right to possession of the property at issue.  Dkt. 101 at 20-21 (citing *Lee v. Hanley*, 61 Cal. 4th

25   1225, 1240 (2015) and *Plummer v. Day/Eisenberg, LLP*, 84 Cal. App. 4th 38, 45 (2010)).

26   Defendants' reply brief does not further address the ownership/possession issue and appears to

27

28   [2] According to Plaintiffs, 240 animals were seized in the first search and 80 animals were seized in
     the second search.  Dkt. 101 at 2-3.

15

1    abandon this argument, but nevertheless the Court finds that Plaintiffs have offered sufficient

2    evidence that they had a right to possess the birds seized by Defendants to give rise to a genuine

3    issue of material fact that precludes summary judgment on this issue.  Specifically, Huemer

4    testified that Hen Harbor is in part a rescue organization, individuals or organizations bring

5    animals there, sometimes birds stay at Hen Harbor and sometimes they go back to the individual

6    or organization that brought them there, and that in the August 2020 time frame she took in

7    animals from multiple sources, including animals whose owners were evacuated during the CZU

8    wildfire in the Santa Cruz mountains.  Dkt. 94-4 at 35:19-37:24.

9                                    **b.    Intent**

10          Defendants next argue that there is no evidence that they had the intent or purpose to

11   convert Plaintiffs' property.  *See* Dkt. 93 at 24.  According to Defendants, "not every failure to

12   deliver property to the rightful owner constitutes a conversion" and "[t]o establish a conversion, it

13   is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to

14   exercise ownership over them, or to prevent the owner from taking possession of the property."

15   *Id.* (citing *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 222 (2003) and cases cited

16   therein).  Defendants assert that "[t]he foundation for a conversion claim 'rests upon the

17   unwarranted interference by defendant with the dominion over the property of the plaintiff from

18   which injury to the latter results."  Dkt. 93 at 24 (quoting *Spates*, 114 Cal. App. 4th at 222); *see*

19   *also Vorhis*, 7 Cal. 5th at 1150 ("[t]oday, the tort of conversion is understood more generally as

20   'the wrongful exercise of dominion over personal property of another'").

21          However, as Plaintiffs note (Dkt. 101 at 21), the California Supreme Court's 2019 *Vorhis*

22   decision stated that "conversion is a strict liability tort" that "does not require bad faith,

23   knowledge, or even negligence; it requires only that the defendant have intentionally done the act

24   depriving the plaintiff of his or her rightful possession."  *Vorhis*, 7 Cal. 5th at 1158.  Defendants

25   emphasize that the animals were "seized on a temporary basis, for the purpose of the warrant."

26   Dkt. 93 at 24; *see also* Dkt. 106 at 13-14 ("The Opposition provides no evidence that Defendants

27   knowingly or intentionally sought to prevent Ms. Huemer from taking possession of any of the

28   birds" which "were only seized by a lawful search warrant, for the duration of the warrant.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    However, Defendants also admit that following the intended "temporary" seizure, dozens of seized

2    animals were never returned to Plaintiffs.  Dkt. 93 at 24 ("At least 267 of the 323 seized animals

3    were returned.  Some animals died.").  Defendants' lawful seizure of the animals does not entitle

4    them to summary judgment on Plaintiffs' conversion claim when Defendants ultimately deprived

5    Plaintiffs of recovering dozens of animals.

6                                        **c.        Conclusion on conversion claim**

7            Accordingly, Defendants' motion for summary judgment on the merits of Plaintiffs'

8    conversion claim is **DENIED.**

9

10                                        **3.        Immunity**

11            Defendants argue that regardless of the merits of Plaintiffs' Bane Act and conversion

12    claims, Defendants are immune from liability.  Dkt. 93 at 21-23.

13                                        **a.        Immunity of Individual Defendants**

14            The Individual Defendants claim immunity for the searches and seizures under California

15    Code of Civil Procedure § 262.1, which states:  "A sheriff or other ministerial officer is justified in

16    the execution of, and shall execute, all process and orders regular on their face and issued by

17    competent authority, whatever may be the defect in the proceedings upon which they were

18    issued."[3]  According to Defendants, this immunity applies "because the two searches and seizures

19    were being carried out via search warrant."  Dkt. 93 at 21.  "In deciding whether process is regular

20    on its face, it is sufficient if it appears valid to an ordinarily intelligent and informed layman [and]

21    [t]he ministerial officer does not have to search out legal niceties of procedure."  *George v. County*

22    *of San Luis Obispo*, 78 Cal. App. 4th 1048, 1051 (2000) (internal quotation marks and citations

23    omitted).  Plaintiffs argue that Defendants are not entitled to immunity under section 262.1

24    because "both search warrants contained no indicia of probable cause and were plainly

25    overbroad."  Dkt. 101 at 17.  However, Plaintiffs' "no indicia of probable cause" argument is

26    based on their incorrect, and later withdrawn, assumption that there were no probable cause

27

28    [3] Both Parties' briefs cite "Government Code § 262.1," but as discussed at the hearing the correct
     code section is Code of Civil Procedure § 262.1.

1  affidavits submitted with the search warrant applications.  *See* Dkt. 117.  In addition, as discussed

2  in section III.B.1. above, the warrants were not overbroad.  Accordingly, insofar as Plaintiffs' state

3  law claims are based on the manner in which the September and October search warrants were

4  executed, the Individual Defendants are immune from such claims under Code of Civil Procedure

5  § 262.1.

6        Each Individual Defendant also argues for immunity for any claims in connection to his or

7  her individual involvement in the decision to apply for search warrants pursuant to California

8  Government Code § 820.2, which provides:  "Except as otherwise provided by statute, a public

9  employee is not liable for an injury resulting from his act or omission where the act or omission

10  was the result of the exercise of the discretion vested in him, whether or not such discretion be

11  abused."  Defendants argue that the decision to apply for the search warrants was "the epitome of

12  a considered, deliberate policy choice."  Dkt. 93 at 22.  "[D]eciding whether to seize animals

13  under [California Penal Code] § 597.1(a)(1) clearly represents an exercise of discretion."  *Recchia*

14  *v. City of Los Angeles Dep't of Animal Servs.*, 889 F.3d 553, 564 (9th Cir. 2018).  Plaintiffs'

15  arguments why this immunity does not apply (*see* Dkt. 101 at 17) are the same as those discussed

16  in the preceding paragraph (absence of probable cause and overbreadth) and fail for the same

17  reasons.  Accordingly, insofar as Plaintiffs' state law claims are based on the decision to apply for

18  the September and October search warrants, the Individual Defendants are immune from such

19  claims under Government Code § 820.2.

20        However, as discussed in section III.C.2. above, Plaintiffs' conversion claim depends at

21  least in part on events that occurred *after* Defendants obtained search warrants and seized animals

22  from Plaintiffs.  Defendants do not identify any statute or other authority that would immunize

23  their post-seizure conduct.  *See* Dkt. 93 at 21-22.

24        In earlier cases, some courts afforded immunity under a statute granting prosecutorial

25  immunity, California Government Code § 821.6, to state officials in connection with state law

26  claims for damage to property seized pursuant to search warrant.  *See, e.g., County of Los Angeles*

27  *v. Sup. Ct.*, 181 Cal. App. 4th 218, 232 (2010) (holding that trial court should have granted

28  summary adjudication on claim for breach of involuntary bailment where conduct that damaged

1    seized property grew out of a search and seizure pursuant to search warrant and the investigation

2    was part of the prosecution process, even though no charges were filed).  However, the California

3    Supreme Court has recently clarified that this immunity does not extend to investigatory actions

4    taken prior to initiation of a judicial proceeding. *See Leon v. Cnty. of Riverside*, 14 Cal.5th 910,

5    309 Cal.Rptr.3d 682, 530 P.3d 1093, 1101 (2023); *see also Agro Dynamics, LLC v. United States*,

6    --- F. Supp. 3d ---, 2023 WL 6130813, at *8 (S.D. Cal. 2023).  Appropriately, Defendants'

7    summary judgment motion in this case does not seek immunity based on section 821.6.

8           In summary, the Individual Defendants are immune on Plaintiffs' state law claims insofar

9    as those claims are based on those Defendants' conduct in obtaining and executing the September

10   and October warrants, but they are not immune from Plaintiffs' conversion claim insofar as it

11   arises from the Individual Defendants' post-seizure conduct.

12                            **b.      Immunity of Shelter**

13          Defendants argue that "to the extent it is deemed involved and/or responsible for the

14   actions of its employees, the Shelter is equally immune."  Dkt. 93 at 22 (citing Cal. Gov't C.

15   § 815.2(b)).  Under section 815.2(b) and the foregoing analysis of the Individual Defendants'

16   immunity, the Shelter is immune from Plaintiffs' state law claims relating to obtaining and

17   executing the two search warrants but is not immune from the Plaintiffs' conversion claim insofar

18   as it arises from post-seizure conduct.

19          With respect to the conversion claim, Defendants also argue that regardless of the merits of

20   that claim against the Individual Defendants, California Government Code § 815(a) immunizes the

21   Shelter, as a public entity, from liability for the common law tort of conversion.  Dkt. 93 at 23.

22   Section 815(a) provides that except as otherwise provided by statute, "[a] public entity is not liable

23   for an injury, whether such injury arises out of an act or omission of the public entity or a public

24   employee or any other person."  However, Defendants acknowledge that Government Code

25   § 815.2(a) provides for liability of a public entity "for injury proximately caused by an act or

26   omission of an employee of the public entity within the scope of his employment if the act or

27   omission would, apart from this section, have given rise to a cause of action against that employee

28   or his personal representative."  Dkt. 9 at 23.  The Shelter does not argue that it is entitled to

United States District Court
Northern District of California

United States District Court
Northern District of California

1   summary judgment on the conversion claim based on the substance of section 815.2(a); instead,

2   the Shelter argues that Plaintiffs cannot hold the agency liable for conversion vis-à-vis Shelter

3   employees under section 815.2(a) because that statutory section "appears nowhere in the operative

4   Third Amended Complaint" and therefore "it is not part of the case." *Id.*; *see also* Dkt. 106 at 13

5   ("Plaintiffs' failure to plead Gov. Code § 815.2 is fatal to their conversion claim against the

6   Shelter."). Plaintiffs disagree that they are required to expressly plead section 815.2. Dkt. 101 at

7   20.

8       The cases cited by Defendants (*see* Dkt. 93 at 23) stand for the proposition that the party

9   moving for summary judgment need only address theories alleged in the complaint, but none of

10   the cases address section 815.2(a) at all, much less impose a requirement that a complaint

11   specifically cite that statute before the plaintiff may seek to impose liability on a public entity for

12   torts committed by its employees. In any event, "[i]t is well-settled that the Federal Rules of Civil

13   Procedure apply in federal court irrespective of the source of the subject matter jurisdiction, and

14   irrespective of whether the substantive law at issue is state or federal." *Zaragoza-Rios v. City of*

15   *Concord,* No. 18-cv-06803-JCS, 2019 WL 2247856, at *5 (quoting *Kearns v. Ford Motor Co.*,

16   567 F.3d 1120, 1125 (9th Cir. 2009)). Plaintiffs therefore "need only satisfy the pleading standard

17   of Rule 8—as interpreted by *Twombly, Iqbal*, and other relevant precedent—under which a

18   complaint need not identify the statutory or constitutional source of the claim raise in order to

19   survive a motion to dismiss." *Zaragoza-Rios*, 2019 WL 2247856, at *5 (denying motion to

20   dismiss claims for excessive force and battery against city where complaint did not identify

21   section 815.2). Defendants have not shown the Court must impose a different pleading standard at

22   the summary judgment stage, or how that would work as a practical matter.

23       Both a public entity's immunity for liability for common law torts under section 815(a)

24   and the entity's vicarious liability under section 815.2(a) are provided by statute. *See generally*

25   *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 785 (N.D. Cal. 2014). Specifically, "Section 815(a)

26   immunizes public entities from liability for injuries arising from [their] acts or omissions except as

27   provided by statute" and "Section 815.2 is one such statute." *Whooley v. Tamalpais Union High*

28   *Sch. Dist.*, 399 F. Supp. 3d 986, 1000 (N.D. Cal. 2019). As discussed above, under section

815.2(a) a public entity is vicariously liable for injuries proximately caused by conversion committed by an employee of the public entity within the scope of his employment.  Here, the Third Amended Complaint pleads that the Individual Defendants committed conversion and alleges that in so doing they were acting within the course and scope of their employment.  Dkt. 58 ¶¶ 7-9, 131-134.  The Third Amended Complaint also alleges more broadly that "[w]henever in this Complaint an act or omission of a government, corporation or business entity is alleged, said allegation shall be deemed to mean and include an allegation that the government, corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by managerial officers or directors, and that the act or omission was ratified by the government, corporation or business entity."  *Id.* ¶ 15.  These allegations provide sufficient notice that whether the Shelter is vicariously liable for the Individual Defendants' conversion is at issue in this case, *see Whooley*, 399 F. Supp. 3d at 1000, and therefore the Shelter is not entitled to summary judgment on Plaintiffs' conversion claim.

### D.    DAMAGES CLAIMS

#### 1.    Emotional distress damages

Defendants move for summary judgment on Plaintiffs' claim for animal-related emotional distress damages on the grounds that "California law only permits animal-related emotional distress for intentional acts," arguing that the only claims that would support such an award—Plaintiffs' Bane Act and conversion claims—fail.  Dkt. 93 at 24-25 (citing *McMahon v. Craig,* 176 Cal. App. 4th 1502, 1514-15 (2009), as modified on denial of reh'g (Aug. 31, 2009) and *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1605-07 (2012)); *see also* Dkt. 106 at 14 ("Plaintiffs' prayer for animal-related emotional distress damages fail because their Bane Act and conversion claims fail").  However, as discussed in section III.C.2. above, Defendants are not entitled to summary judgment on Plaintiffs' conversion claim.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' claim for emotional distress damages is **DENIED.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### 2. Punitive damages

The Individual Defendants seek summary judgment on Plaintiffs' claim for punitive damages. Dkt. 93 at 25. They acknowledge that punitive damages are available on: (1) a section 1983 claim where the defendant's conduct is "shown to be motivated by evil motive or intent, or where it involves reckless or callous indifference to the federally protected rights of others" (*id.* (quoting *Smith v. Wade,* 461 U.S. 30, 56 (1983)); and (2) a state law claim where it is proven "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice" (*id.* (quoting Cal. Civ. C. § 3294)).

For the reasons discussed above, Defendants are entitled to summary judgment on Plaintiffs' Fourth Amendment claim and the Bane Act claim, and therefore Plaintiffs are not entitled to recover punitive damages in connection with those claims. However, as also discussed above, Defendants are not entitled to summary judgment on Plaintiffs' claim for conversion. Pursuant to California Civil Code § 3294, Plaintiffs may recover punitive damages where there is clear and convincing evidence that a defendant has acted with "oppression, fraud, or malice." Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). Oppression means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). Fraud is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3).

The Individual Defendants argue there is no evidence that they acted in such a manner. Dkt. 93 at 25. However, Plaintiffs have presented evidence that Defendants gave a turkey that was seized from Plaintiffs to a third party (*see* Dkt. 107-8 at 190:15-21) and that a veterinarian consulted by the Shelter recommended euthanasia of 3 to 5 of the chickens that were seized (*see* Dkt. 107-5 ¶ 8). It is undisputed that several dozen birds seized by the Shelter were never returned to Plaintiffs. The Court finds there is an issue for the trier of fact regarding whether Defendants

acted with the requisite oppression, fraud, or malice in connection with their failure to return or account for all of the animals seized from Plaintiffs, though it remains to be seen whether Plaintiffs can support such a claim with clear and convincing evidence.  Accordingly, the Individual Defendants motion for summary judgment on Plaintiffs' claim for punitive damages is **DENIED**.

## IV.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs seek partial summary judgment on the following issues:

1.    Whether the September search warrant was invalid as a matter of law;

2.    Whether the October search warrant was invalid as a matter of law; and

3.    Whether the seizures pursuant to the two warrants were lawful.

Dkt. 102 at 1.  Plaintiffs base their summary judgment motion largely on an argument concerning the purported lack of a probable cause affidavit in support of each warrant (*see id.* at 4-8), but as discussed above Plaintiffs have now conceded that probable cause affidavits were submitted in support of each warrant application.  Dkt. 117.  Plaintiffs also argue that the search warrants were overbroad because they allowed seizure of "all animals (alive or dead)" (*see* Dkt. 102 at 8-10), but as discussed in section III.B.1 above, the Court rejects that argument.  Accordingly. Plaintiffs' motion for partial summary judgment is **DENIED.**

## V.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1.    Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' claims for violations of the Fourth Amendment (second cause of action) and the Bane Act (fourth cause of action).

2.    Defendants' motion for summary judgment is **DENIED** with respect to Plaintiffs' claim for conversion (fifth cause of action).

3.    Defendants' motion for summary judgment on Plaintiffs' claim for emotional distress damages is **DENIED**.

4.  Defendants' motion for summary judgment on Plaintiffs' claim for punitive damages is **DENIED**.

5.  Plaintiffs' motion for partial summary judgment is **DENIED** in its entirety.

**SO ORDERED.**

Dated:  June 20, 2024

_____

SUSAN VAN KEULEN
United States Magistrate Judge